**Ferdinand J. MACK, Jr., Plaintiff,**

**v.**

**Joseph A. CALIFANO, Jr., et al., Defendants.**

**Civ. A. No. 77–916.**

United States District Court, District of Columbia.

Feb. 23, 1978.

Ferdinand J. Mack, Rockville, Md., for plaintiff.

L. Mark Wine, Dept. of Justice, Washington, D. C., for defendant.

OPINION

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff seeks a preliminary injunction to prevent an experiment testing the biological properties of polyoma DNA (deoxyribonucleic acid) cloned in bacterial cells. The experiment is to be conducted in Building 550, Frederick Cancer Research Center at Fort Detrick, Maryland. Also before the Court is defendants' motion to vacate a voluntary stay.

Defendants are Joseph A. Califano, Jr., Secretary of Health, Education, and Welfare, Donald S. Frederickson, Director of National Institutes of Health, and John E. Nutter, Chief Officer of Specialized Research and Facilities, National Institute of Allergies and Infectious Diseases, National Institutes of Health.

56. *See United States v. Ong,* 541 F.2d 331, 338 (2d Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

On May 31, 1977 plaintiff, an infant resident of Frederick, Maryland, filed a motion for temporary restraining order and preliminary injunction to enjoin defendants from undertaking the experiments or constructing facilities at Fort Detrick to be used for the research. On July 18th a stipulation was entered into by the parties staying all proceedings pending finalization by the defendants of an Environmental Impact Statement and providing for 30 days notice to plaintiff of any experiments to be conducted at Fort Detrick after such finalization. In accordance with the stipulation, defendants advised plaintiff that an Environmental Impact Statement (EIS) became final on November 28, 1977 when the Council on Environmental Quality published notice of its receipt in the Federal Register. Plaintiff contends that the statement does not comply with the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C) and other statutes.

A motion of the American Society for Microbiology for leave to file a brief as Amicus Curiae with respect to the public health consequences of the proposed research was granted. Counsel for the Society participated in oral argument and submitted a brief. Dr. Naum S. Bers, Rockville, Maryland, appeared individually as a concerned citizen and was granted permission to file a statement.

Plaintiff asserts that defendants are planning to conduct experiments with polyoma, a virus known to cause cancer in mice. He states that the nature of the organisms to be created by the research is such that even a miniscule quantity, if released, in the environment would represent a threat to life and health. He further contends that the Fort Detrick experiments are to be conducted by defendants without determining the applicability of NEPA and according to the very guidelines of the Department of Health, Education, and Welfare (HEW) classified as "prohibited".

Defendants on the other hand take the position that the EIS and NIH (National Institutes of Health) guidelines reflect the cautious manner in which the scientific community and NIH have considered the new technology involving recombinant DNA molecules. They further state that the final EIS was completed after extensive public comment and discussion of alternatives. Much of plaintiff's concern, they state, is based on an apparent misunderstanding of the nature of the materials to be used in the experiment. Plaintiff's affidavits are based on the belief that the experiment here in question will be conducted utilizing a common strain of escherichia coli (E coli) as the host-vector for the planned studies. Significantly, the NIH guidelines "prohibit certain kinds of recombinant DNA experiments which include virtually all the known hazards—for example, those involving known infectious agents."

The research is now restricted by these guidelines to implanting any new genes into enfeebled strains of E coli, a human gut bacteria that has been modified even further to make it safe as the new DNA's laboratory host. In the planned experiment a derivative of E coli K-12, which has been specifically designed to "self destruct", will be employed. E coli K-12 is unable to colonize within the human intestinal tract and causes no known human or animal disease. See EIS at page 73. This EK2 host-vector system will not survive passage through the intestinal tract of animals and will "die" because of its dependency on chemicals not found in nature.

Defendants further point out that the complete experiment will be conducted in P4 physical containment laboratories which have been shown to safely contain microbes presenting a known and demonstrable hazard to man. For each certified EK2 system, "Appendix H, page 10 of the EIS", NIH reviews extensive scientific data to determine that the system meets the standards for safety. EIS at 81. See NIH guidelines, Appendix D, page 15. It is evident, therefore, that there is actually a two step distinction between the common strains of E coli which "do live in people" and the EK2 host-vector system which will be used in these experiments.

Counsel for the American Society for Microbiology states that the weight of scientific opinion now considers that recombinant DNA research in accordance with the NIH guidelines will not have adverse environmental or public health consequences. He contends that the present guidelines are more conservative than necessary and that certain restrictions in these guidelines could be safely modified. He further asserts that these guidelines are *not* in fact the very guidelines of HEW classified as "prohibited" as was asserted by plaintiffs. In the opinion of the Society, the proposed Fort Detrick experiment will specifically advance the public interest and present no risk of harm to the environment.

The research involves dividing and then rejoining the heredity-carrying material of various organisms—deoxyribonucleic acid, or DNA—to make recombinant hybrids that carry some of the traits of two unrelated forms. It is contended that the value of such work is that it may create new medicines, vaccines, industrial chemicals or crops. The risk, some scientists claim, is that it could create unexpectedly dangerous new ailments or epidemics. Many scientists are of the opinion that exaggerations of the hypothetical hazards have gone far beyond any reasoned assessment. They take the position that the experience of the last four years, including many laboratory experiments, has shown no actual hazards.

Recently the Supreme Court has summarized the limited role of the courts in determining whether the agencies have complied with NEPA.

> The only role for a court is to insure that the agency has taken a 'hard look' at environmental consequences; it cannot 'interject itself within the area of discretion of the executive as to the choice of the action to be taken'. *Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976) citing *Natural Resources Defense Council v. Morton,* 148 U.S.App.D.C. 5, 16, 458 F.2d 827, 838 (1972).

The EIS does represent a "hard look" by NIH at recombinant DNA research performed in accordance with its guidelines. It appears that compliance with the NIH guidelines will insure that no recombinant DNA molecules will escape from the carefully controlled laboratory to the environment.

Plaintiff requested an extension of time to furnish additional evidence. He submitted supplemental affidavits from four of his previous affiants which reaffirmed their previously expressed opinions. None of the affidavits established that the experiment is likely to cause harm to human health or to the environment. The Recombinant DNA Research Guidelines represent an effort by many scientists to evaluate the hazards and provide safe methods for their control. The record reflects that NIH has carefully considered the potential risks of this experiment under the guidelines and has taken the necessary precautions.

The experiment is designed to provide important and needed information on the possibilities of recombinant DNA technology. Important scientific information relative to the possibilities of this technology would be delayed if a preliminary injunction were granted.

Accordingly, plaintiff's motion for a preliminary injunction is denied. Defendants' motion to vacate stay is granted.

## FINDINGS OF FACT

1. Plaintiff's complaint, motion for temporary restraining order and preliminary injunction were filed on May 31, 1977.

2. On July 18, 1977 a stipulation was approved by the Court providing that all matters would be stayed pending the finalization of an Environmental Impact Statement (EIS), that defendants would give plaintiff thirty days notice before proceeding with the experiment, and that no such experiment would be conducted prior to the finalization of an EIS.

3. The National Institutes of Health (NIH) guidelines and final EIS were the result of a lengthy administrative process. The scientific community had operated for several years under voluntary restraints

limiting the kinds of recombinant DNA research that could be undertaken.

4. A public meeting was held by NIH on February 9th and 10th, 1976 which was announced to the public in the Federal Register. Thereafter NIH published the "decision of the Director, NIH and NIH guidelines on recombinant DNA research on July 7, 1976. At that time NIH announced that it was preparing a draft environmental impact statement. 41 Fed.Reg. 27902 (1976). On September 9, 1976 the draft EIS was published in its entirety in the Federal Register. 41 Fed.Reg. 38426 (1976). The final EIS was prepared and notice of its availability published in the Federal Register on November 28, 1977. 42 Fed.Reg. 6588 (1977).

5. The NIH guidelines govern all facets of NIH–funded research using recombinant DNA techniques. The guidelines provide detailed requirements for both physical and biological containment designed to insure that recombinant DNA molecules will pose no threat to man or the environment. The experiment is to be conducted in accordance with these guidelines.

6. The laboratory at Fort Detrick is a P4 laboratory with extensive safeguards built into its design. The experiment is to be conducted under P4 physical containment requirements—the highest level of physical containment. P4 facilities are governed by rules limiting access, providing for change of clothes before entering and leaving, and numerous other safety features. All recombinant DNA materails are handled in gas-type safety cabinets and removed only after sterilization.

7. The experiment is to be conducted using EK2 host-vector systems. In the planned experiment, a derivative of E coli K–12 which has been specifically designed to self-destruct if removed from the controlled laboratory environment will be used. E coli K–12 itself is safe and has been used for years without known harm to the laboratory workers or to the environment.

8. E coli K–12 is unable to colonize in the human intestinal tract and causes no known human or animal disease. The EK2 system uses a K–12 derivative that must have special chemicals found only in an artificial laboratory setting in order to survive and is safer than ordinary K–12. If these chemicals are not present, the EK2 is designed to self-destruct.

9. Recombinant DNA research has already become a valuable aid in progress against illness. Benefits include applied medical advances and an accelerated understanding of the genetic and biochemical basis of the disease process.

10. The experiment is designed to provide important knowledge concerning recombinant DNA technology.

11. The experiment poses no substantial risk to human health or to the environment because (1) there is little likelihood the materials will escape from the maximum containment of the P4 facility; (2) if such an escape did occur, the recombinant DNA molecules would not survive but would self destruct outside the laboratory environment; and (3) the particular virus being used has never been implicated in human disease.

12. Plaintiff has offered no evidence to show that he will suffer irreparable injury or that there is any significant possibility that the experiment will have an adverse impact on the environment.

## CONCLUSIONS OF LAW

1. Plaintiff has not shown that he would be irreparably injured unless a preliminary injunction is granted.

2. Plaintiff has not sustained the burdens imposed upon him by *Virginia Petroleum Jobbers Association v. FPC* 104 U.S. App.D.C. 106, 259 F.2d 921 (1958) in that he has failed to demonstrate that he would be irreparably injured in the absence of the issuance of an injunction, that he is likely to prevail upon the merits of the controversy, and that the public interest lies in granting the requested relief.